**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: November 25, 2008**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| MARY ORTEGON, | § | CASE NO. 07-11225-CAG |
| Debtor. | § | Chapter 13 |
| | § | |
| DEBORAH LANGEHENNIG, TRUSTEE, | § | |
| AND MARY ORTEGON, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | ADVERSARY NO. 07-1103 |
| | § | |
| AMERIQUEST MORTGAGE | § | |
| COMPANY, | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AFTER TRIAL

The Court held a bench trial on the merits of the above-referenced matter on June 25, 2008. Counsel for Plaintiffs and Defendant WM Specialty Mortgage, LLC appeared and argued their positions. The parties agreed that this Court has core jurisdiction over the subject matter of the

1

claims. The parties agreed that no other parties need to be joined in this suit.[1] Plaintiffs admitted Exhibits 1-10, and Defendant admitted Exhibits 1-15 into the record of the trial. The Court took the matter under advisement. The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. For the reasons stated herein, the Court finds in favor of the Defendant Ameriquest Mortgage Company and Defendant WM Specialty Mortgage, LLC and awards to Plaintiffs a take nothing judgment against Defendants.

General Background

Plaintiffs Mary Ortegon (Debtor in this bankruptcy case) and Deborah Langehennig (Chapter 13 Trustee) filed this suit against Defendant Ameriquest Mortgage Company (AMC), alleging that Defendant AMC violated various provisions of the Texas Constitution governing home equity loans made on homesteads (hereinafter referred to as the Texas Home Equity Lending provisions). Specifically, they assert that information was not written into a document that Plaintiff Ortegon signed when she obtained a loan from Defendant AMC, specifically, a document that stated the value of the property on which the loan was being made, and that this failure to include such information is a constitutional violation. Defendant AMC, and Defendant WM Specialty Mortgage, LLC, which was allowed to intervene as a defendant in this suit at about the time of the trial, contest that any such violation occurred, but in any event, argue that all claims are barred by the applicable limitations period as being brought too late.

On April 16, 2003, Defendant AMC made a $121,500 loan to Plaintiff Ortegon and Jerry Lopez, Jr. To secure repayment of the loan, Plaintiff Ortegon and Mr. Lopez executed a Texas

---

[1] Jerry Lopez, Jr. is a co-borrower on the note at issue with Plaintiff Mary Ortegon, however, he is not a party to this suit. It is unclear whether Mr. Lopez is the son or brother of Ms. Ortegon. Prior to the loan closing, Ms. Ortegon conveyed ½ interest in the property at issue to Mr. Lopez.

2

Home Equity Security Instrument (First Lien) granting Defendant AMC a first lien on the property located at 4901 Allison Cove, Austin, Texas 78741 (the Property). The proceeds of this home equity loan were used to pay off a pre-existing loan in the amount of $92,728.33 owed by Plaintiff Ortegon to Countrywide Home Loans, Inc. and which was secured by liens on the Property. Plaintiff Ortegon had originally borrowed $104,400 from CLN Mortgage to finance the purchase of the Property from Michele Damerau.[2] The CLN loan was secured by a Vendor's Lien retained in a Warranty Deed to Plaintiff Ortegon dated October 31, 1995 which included language that the lien on the Property be retained in favor of CLN until the loan was paid. The CLN loan was additionally secured by a Deed of Trust of the same date which granted CLN a first lien against the Property. The CLN Loan and Deed of Trust and Vendor's Lien were assigned to Countrywide Funding Corporation d/b/a America's Wholesale Lender on October 31, 1995. W.M. Specialty Mortgage, LLC is now the beneficial owner of the Mary Ortegon loan and securing liens by assignment from Defendant AMC, with servicing of the loan performed by Citi Residential Lending, Inc. *See* Defendant's Exhibit 14, Assignment and Transfer of Lien Between Defendant AMC and Defendant W.M. Specialty Mortgage, LLC, dated Dec. 6, 2004. At trial, the attorney for Defendant WM Specialty Mortgage LLC explained that beneficial ownership of the subject loan originated by Ameriquest Mortgage Company was transferred to WM Specialty Mortgage, LLC on May 23, 2003 but that Ameriquest Mortgage Company retained servicing of the loan through the Fall 2007, when Citi Residential Lending acquired Ameriquest Mortgage Company and began servicing the subject loan.

---

[2] Plaintiff Ortegon borrowed the money from CLN Mortgage with a co-borrower, Fernando E. Mireiles. However, she assumed all of the debt owed by Fernando E. Mireles in June 2002. Mr. Mireiles plays no part in this lawsuit.

3

Procedural History

In this suit, Plaintiffs assert that Defendant AMC violated Texas Constitution, Article XVI, § 50(a)(6)(Q)(iii) when at the closing of the loan with Defendant, one of the required documents, an Affidavit of Acknowledgment as to Fair Market Value of Homestead Property, contained two blanks that were not filled in with information, one blank being for the date of the extension of credit and the second blank being for the value of the homestead at the time of the extension of credit. At the time of the closing of the loan in April 2003, § 50(a)(6)(Q)(iii) provided that "the owner of the homestead not sign any instrument in which blanks are left to be filled in."[3] Defendant AMC declined to cure after Plaintiffs made demand for the same, responding that the Affidavit did not contain any omissions and that Defendant had complied with all provisions of the Texas Home Equity Lending provisions.[4] By failing to cure the defect, Plaintiffs assert that Defendant AMC is liable to them pursuant to Article XVI, § 50(a)(6)(Q)(x) which provides that "the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply . . . .." As damages, Plaintiffs seek to have the lien upon the Homestead declared void, all payments of principal and interest made by Plaintiff Ortegon on the loan refunded, and Plaintiffs' reasonable

---

[3] After a 2007 amendment, the section now reads "the owner of the homestead not sign any instrument in which blanks relating to substantive terms of agreement are left to be filled in." Tex. Const. art. XVI, § 50(a)(6)(Q)(iiii) (amended 2007).

[4] Plaintiff Ortegon made demand upon Defendant to cure the violation in compliance with § 50(a)(6)(Q)(x)(f), which provides "if the failure to comply cannot be cured under Subparagraphs (x)(a)-(e) of this paragraph, curing the failure to comply by a refund or credit to the owner of $1,000 and offering the owner the right to refinance the extension of credit with the lender or holder for the remaining term of the loan at no cost to the owner on the same terms, including interest, as the original extension of credit with any modifications necessary to comply with this section or on terms on which the owner and the lender or holder otherwise agree that comply with this section[.]" Tex. Const. art. XVI, § 50(a)(6)(Q)(x)(f).

attorney's fees be paid by Defendant as allowed by Texas Civil Practices and Remedies Code § 38.001 *et. seq*.

AMC answered by generally denying the allegations of Plaintiffs' Complaint. (Doc. No. 6).

Plaintiffs then filed a motion for partial summary judgment, asserting that at closing, Plaintiff Ortegon signed an Affidavit that had blanks left to be completed, which is a violation of the Texas Home Equity Lending provisions. Thus, Plaintiffs should be allowed damages that include invalidation of Defendant AMC's lien on the homestead property, a return of principal and interest paid on the violating loan, and attorney's fees. Plaintiffs provided affidavits of both Plaintiff Ortegon and her bankruptcy counsel in support of their claim that the "Affidavit of Acknowledgment as to fair Market Value of Homestead Property" impermissibly contained two blanks. Further, Plaintiffs alleged that Plaintiff Ortegon sent the statutorily-required cure notice to Defendant AMC, which responded by indicating the Affidavit it had in its records was completely filled out. Plaintiffs contended that there was no issue of any material fact, and, as such, the Court could render judgment for Plaintiffs.

Defendant responded in its Response to Plaintiffs' Motion for Partial Summary (Doc. No. 30), stating there was an issue of material fact regarding which Affidavit was the correct affidavit. Further, because the Affidavit did not alter or create a legal right, it was not a material document to the loan at issue. Defendant alleged that, because the Texas Constitution contains no specific statute of limitations for an action to rescind or void a loan, Texas Civil Practices and Civil Remedies Code § 16.051 applies.[5] This section provides that when there is no express statute of

---

[5] "Every action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues. Tex. Civ. Rem. Code § 16.051 (Vernon 2008).

limitations governing an action, the residual statute of limitations of four (4) years is used. Third, Defendant argued that the Plaintiffs' failure to join Jerry Lopez, Jr. (a purported ½ interest co-owner of the property) violated Federal Rule of Civil Procedure 19 in that Mr. Lopez was an indispensable party to the instant action. Fourth, Defendant argued that damages were limited to the "extension of credit" and not the entire amount of the indebtedness. Finally, Defendant AMC argued that, should its lien on the Property be invalidated, it was subrogated to the prior Countrywide deed of trust and vendor's lien that Defendant had paid in the amount of $92,728.33.

In their reply, Plaintiffs argued that no material fact issue existed as to the execution of the Affidavit and the omitted information contained in that document. (Doc. No. 31). Further, Plaintiffs argued that the Affidavit did create or alter a legal right. Plaintiff also asserted that Defendant failed to cure the home equity violation in a timely manner and that Defendant's remaining defenses were not before this Court. Further, Plaintiffs argued limitations did not run until demand is made on a party, and Plaintiffs' failure to join Mr. Lopez did not preclude their ability to contest Defendant's lien. After considering the arguments and evidence presented, the Court denied Plaintiffs' motion for summary judgment.

Defendant then filed its First Amended Answer and Original Counterclaim, alleging the same defenses that were stated in its Response to Plaintiffs' Motion for Summary Judgment, and asserting a counterclaim for declaratory judgment under 28 U.S.C. § 2201 and Texas Civil Practices and Remedies Code § 37.001. (Doc. No. 36). Defendant's counterclaim requests that, should the Court determine the Defendant AMC's deed of trust not be valid, perfected and enforceable in all respects, then Defendant AMC should be equitably subrogated to the Countrywide deed of trust and vendor's lien.

Thereafter, Defendant AMC filed a Motion for Partial Summary Judgment alleging that the following facts were not in dispute:

(1) AMC made a loan to Ms. Ortegon and Mr. Lopez in the amount of $121,500.00 on April 23, 2003.
(2) Ms. Ortegon conveyed an one-half (½) interest in the subject property to Mr. Lopez.
(3) The AMC loan proceeds were used to pay off the pre-existing Countrywide loan in the amount of $92,728.33.
(4) The AMC deed of trust in paragraph 24 contains a right of subrogation for the lender to any prior liens and debts outstanding on the Property prior to execution of the AMC deed of trust, whether these liens or debts were assumed by AMC or released by payment from AMC.

Defendant re-asserted that Plaintiffs' claims were barred by limitations. Further, Defendant argues that it was entitled to a limitation of damages such that, if Defendant was determined to be subrogated to Countrywide's lien, then Defendant would be liable for damages for the extension of credit that exceeded the amount used to pay off Countrywide's loan. Finally, Defendant asserted that it was entitled to summary judgment on its counterclaim to enforce its right of subrogation based upon the Texas Supreme Court's decision in ***LaSalle Bank N.A., a/k/a LaSalle National Bank, as Trustee and LaSalle National Bank, as Trustee Under the Pooling and Servicing Agreement Dated June 1, 1999, Series 1999-2 v. Lorae White and Gerald Geistweidt***, 246 S.W.3d 616, 621 (Tex. 2007), *reh'g denied* March 28, 2008. That decision determined that Texas Constitution, Article XV, § 50(e) did not abrogate the longstanding common law principle that equitable subordination applies to protect lenders of money on homestead property, even lenders whose loans violated constitutional provisions. ***Id.*** at 620. Thus, LaSalle Bank, despite having violated the home equity loan requirements set forth in § 50, could still claim an entitlement to equitable subrogation to the extent its loan proceeds were used to refinance and extinguish a prior valid purchase money lien held by another creditor on the homestead. ***Id.***

Plaintiffs' Response to Defendant's Motion for Partial Summary Judgment admitted the Defendant's statement of undisputed facts except for the fact that Ms. Ortegon asserted she conveyed the one-half interest in the subject property to Mr. Lopez at the insistence of Defendant AMC in order to qualify for the loan. (Doc. No. 42). Plaintiffs reiterated that their claims were not barred by limitations and that Defendant was only entitled to have its lien equitably subrogated if it be proven that the Countrywide lien was valid.

Defendant then filed a Reply to Plaintiffs' Response (Doc. No. 43) and a Post Hearing Brief in Support of AMC's Motion for Partial Summary Judgment. (Doc. No. 44).[6] In its Reply, Defendant argued that there was no issue of material fact regarding the allegations that Defendant relied on in support of its Motion for Summary Judgment. Defendant asserted that Plaintiffs failed to provide any evidence to support the claim that Plaintiff Ortegon conveyed the one-half interest in the subject property to Mr. Lopez at the insistence of AMC in order to qualify for the loan at issue nor was this claim asserted in the Complaint. Defendant asserted that limitations barred this suit because: 1) Plaintiffs asserted the loan violated the provisions of the Texas Home Equity Lending provisions at the time the loan was made in April 2003; 2) the Texas Constitution contains no express provision defining when a cause of action for a violation of the home equity provisions arises so courts must look to common law; 3) under Texas common law, the accrual of a cause of action occurs when the defendant's wrongful conduct causes some legal injury; and 4) the claim arose in April 2003, and this suit was not filed until September 26, 2007, after the four-year limitations period ran. Further, Defendant argued that in no pleading had Plaintiffs challenged the validity of the prior lien held by Countrywide, nor had they answered Defendant's counterclaim for declaratory judgment

---

[6]At a hearing held on Plaintiffs' Motion for Summary Judgment held December 17, 2007, the Court invited argument and briefing from the parties as to the application of a statute of limitations.

8

that it was entitled to subrogation of the Countrywide lien, thus, Defendant was entitled to subrogation.

In its Post Hearing Brief submitted after the hearing on the summary judgment motion, Defendant AMC argued that Plaintiffs failed to plead any facts to put Defendant on notice that Plaintiffs sought to invoke the discovery rule as an affirmative defense to the affirmative defense of limitations. Further, Defendant argued that Plaintiffs had failed to answer its First Amended Original Answer, specifically its affirmative defense of limitations set forth in that answer. Thus, Defendant argued, Plaintiffs were limited to the claims made in their Original Complaint, and in that pleading, they did not plead the discovery rule. It asserted the alleged injury occurred at the time of the loan closing when Plaintiffs signed the Affidavit which they claim contained impermissible blanks. Defendant asserted that Plaintiff Ortegon is charged with knowledge of the instruments she signed, citing **In re Degley**, 797 S.W.2d 299, 304 (Tex. App.–Corpus Christi 1990, no writ) that under Texas law, a party who signs a contract is charged with notice of its contents as a matter of law, despite an alleged claim of ignorance or inability to understand. Further, Defendant asserted that Plaintiff Ortegon conceded she received copies of the documents she signed at closing, thus, there could be no "later" discovery.

On June 16, 2008, the Court issued an Order Granting in Part Defendant's Motion for Summary Judgment and Reserving Ruling in Part on Defendant's Motion for Summary Judgment. (Doc. No. 56). In that order, it found that Defendant AMC's loan proceeds had paid a valid lien on the Property: 1) Defendant AMC had provided proof of the validity of the prior lien held first by CLN Mortgage and then by Countrywide; 2) Plaintiffs had not submitted any evidence to show invalidity of the prior lien; and 3) Plaintiffs failed to answer Defendant's counterclaim for

subrogation made in Defendant's First Amended Original Answer and Original Counterclaim. Thus, Defendant AMC was granted summary judgment such that, should its first lien against the property located at 4901 Allison Cove, Austin, Texas 78741 be found not valid, perfected, and enforceable in all respects because of a violation of the Texas Home Equity Lending provisions, Defendant AMC is contractually, expressly, and equitably subrogated to the CLN Mortgage deed of trust and the CLN vendor's lien against the Property, which were assigned to Countrywide Home Loans, Inc., to the extent that the same were released after payment of loan proceeds from Defendant AMC, plus interest from the date of the AMC loan closing at the highest permissible rate. The Court reserved ruling on whether Plaintiffs' claims are barred by limitations and allowed the parties to reurge this issue at trial.

At the time of trial, WM Specialty Mortgage, LLC (WM) was granted leave to intervene as a defendant in this adversary proceeding because it is the beneficial owner of the loan and securing liens at issue by assignment from Ameriquest Mortgage Company, with servicing of the loan presently performed by Citi Residential Lending, Inc. Defendant WM, acting by and through its servicer Citi Residential Lending, Inc., filed its Answer and Counterclaim. In that pleading, it asserted as affirmative defenses the four-year statute of limitations contained in Texas Civil Practices & Remedies Code § 16.051 and contractual and equitable subrogation to the purchase money vendor's lien and purchase money deed of trust lien granted in favor of CLN Mortgage when Plaintiffs purchased the property (and which liens were later assigned to Countrywide Funding Corporation d/b/a America's Wholesale Lender and paid from the proceeds of the Defendant AMC loan). Defendant WM asserted a counterclaim that, should the loan be found to have violated § 50(a)(6)(Q)(iii) and that claim is not barred by limitations, it be entitled to a declaratory judgment

10

that it is the beneficiary of a lien against the Property in the amount of $92,728.33 plus interest because this amount was paid by Defendant AMC to discharge the prior loan and lien held by CLN Mortgage and it, Defendant WM, is the beneficial owner of the loan made to Plaintiff by Defendant AMC. Defendant WM's arguments are somewhat identical to those raised by Defendant AMC.

On June 25, 2008, the Court held a trial on the merits. Plaintiff Ortegon was present in the courtroom but her testimony was proffered by her attorney. In that proffer, Plaintiff Ortegon stated that she had no independent recollection of the Affidavit having blanks of information in it when she signed it. However, she was given a copy of all of the documents produced at the closing of the subject loan, including a copy of the Affidavit that had the two blanks of information left to be completed. Defendant WM did not proffer any testimony nor challenge the proffered testimony of Plaintiff. No witnesses provided testimony. The parties presented evidence through exhibits and made legal arguments. Defendant WM presented documents that established a chain regarding Ms. Ortegon's ownership of the property and documents reflecting the loan transactions involving Countrywide and AMC. Defendant also provided copies of the loan documents as they relate to the AMC financing. Plaintiffs provided copies of the closing documents associated with the AMC loan closing and copies of the demand to cure made on AMC. Neither party contested the other party's exhibits and all exhibits were admitted into the record of the trial.

For purposes of trial, should limitations not apply, Defendant argued that it did not matter whether there were omissions in the contested Affidavit because the Affidavit was not an "instrument," it was not a type of document referred to in § 50(a)(6)(Q)(iii) that was prohibited to contain blanks of information. In other words, the prohibition contained in § 50(a)(6)(Q)(iii) that "the owner of the homestead not sign any instrument in which blanks are left to be filled in" does

11

not apply to an acknowledgment of homestead value. Even the statute governing acknowledgments of value, Art. XVI, § 50(a)(6)(Q)(ix), which states "the owner of the homestead and the lender sign a written acknowledgment as to the fair market value of the homestead property on the date the extension of credit is made" does not require the acknowledgment to be in the form of an affidavit, thus, lessening its status and indicating it is not an instrument.

Defendant WM argued that regulatory commentary, issued by the Office of the Consumer Credit Commissioner, joined in by the Commissioners of the Departments of Banking, Credit Unions, and Savings & Loans, effective October 7, 1998, spoke to the issue of blanks being left in documents as referenced in § 50(a)(6)(Q)(iii). Defendant argued that this prohibition refers to material terms of the loan contract and not to signature blocks that must be signed to execute the documents, indicating a two-fold purpose of the Texas Home Equity Lending provisions of allowing home equity loans but providing protection to borrowers from unscrupulous lenders.

Defendant argued that a later administrative commentary, Senate Joint Resolution § 153.20, issued by the Finance and Credit Union Commissioners in September 2003, defined the term "instrument" to be a "document or record that creates or alters a legal obligation of a party." Defendant admitted that this commentary was not in effect at the time of the subject loan but represents a continuing administrative commentary that requires major contract terms, such as interest rate, length of loan, and amount of the loan, to be set forth on all documents. Defendant argued that a 2007 amendment to § 50(a)(Q)(iii) shows this purpose by more clearly stating that "the owner of the homestead not sign any instrument in which blanks *relating to substantive terms of agreement* are left to be filled in."[7] Additionally, Defendant argued that the text of another section,

---

[7] The amendment is shown in italics.

Art. XVI, § 50(h),[8] shows the purpose of an acknowledgment is not to create or alter a legal obligation of a party but to allow the lender (or assignee for value) to later conclusively rely on the fair market value set forth on the acknowledgment as the correct value if the value was based on an appropriate appraisal and the lender had no knowledge at the time of the loan that the value was incorrect. Thus, Defendant argued an acknowledgment is for evidentiary purposes should an issue arise over the loan to value amount, providing protection for the lender because the borrower has acknowledged the lender relied upon the stated value when deciding to make the loan.

Plaintiffs countered that an acknowledgment is an "instrument" and contains information that can create or alter a legal obligation between the parties to the loan. Arguing that this document is more than just something to be used for evidentiary purposes later if needed, Plaintiffs assert that the acknowledgment form itself uses the word "instrument" twice in its text. Second, § 50(h) does more than merely allow a lender to rely on the value set forth on the acknowledgment as the appropriate value–instead, § 50(h)(1) requires the value to have been supported by "an appraisal or evaluation prepared in accordance with a state or federal requirement applicable to an extension of credit under Subsection (a)(6)." Thus, the parties to the transaction are relying upon a determination of value by a third party, such as an appraiser. Plaintiffs argue an acknowledgment is more than some sort of supporting paperwork but is an integral document to the loan transaction.

After the hearing, the Plaintiffs provided the Court with their Damage Calculation Based on Equitable Subrogation, to which the attorney for Defendant WM approved the form thereof. This

---

[8] "A lender or assignee for value may conclusively rely on the written acknowledgment as to the fair market value of the homestead property made in accordance with Subsection (a)(6)(Q)(ix) of this section if: (1) the value acknowledged to is the value estimate in an appraisal or evaluation prepared in accordance with a state or federal requirement applicable to an extension of credit under Subsection (a)(6); and (2) the lender or assignee does not have actual knowledge at the time of the payment of value or advance of funds by the lender or assignee that the fair market value stated in the written acknowledgment was incorrect." Tex. Const. art. XVI, § 50(h).

13

document shows how damages should be calculated should the Court rule for Plaintiffs. Also, after the hearing, Defendant WM provided the Court with an opinion from the Texas Fifth Court of Appeals that it asserts is dispositive of the limitations issue presented, ***Rivera v. Countrywide Home Loans, Inc., et al.***, No. 05-07-00962-CV, 262 S.W.3d 834, 2008 WL 3196646 (Tex. App.-Dallas Aug. 8, 2008, *reh'g overruled* Oct. 3, 2008, *second reh'g overruled* Oct. 28, 2008, no. pet. h.).

In ***Rivera***, the Texas appellate court determined whether the trial court had erred in granting summary judgment on limitations when it found that the several claims made in the lawsuit, including claims for violations of article XVI, § 50(a)(6)(B), were barred as filed more than four years after the closing date of the home equity loan. ***Id.*** at 1. The court applied the four-year statute of limitations found in Texas Civil Practices and Remedies Code § 16.051, which provides a residual four-year period when no other limitations period applies, to which the parties to that suit had agreed was applicable to their constitutional cause of action. ***Id.*** at 3. The court was required to determine the proper date of the accrual of the cause of action, either the date of the loan closing as asserted by the lender or the date of the final installment payment due on the home equity note, or alternatively, in the event of foreclosure, on the date of the acceleration of the note, as asserted by the borrower. ***Id.*** The court noted that because the Texas constitutional provision does not define an accrual date for violations, the court must do so and would do so as a matter of law. ***Id.*** The court stated it would follow the general rule that "the accrual of a claim for purposes of limitations is 'the legal injury rule,' which states that a claim accrues 'when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred.'" ***Id.*** (quoting ***Murphy v. Campbell***, 964 S.W.2d 265, 270 (Tex. 1997)). Thus, specifically rejecting the borrowers' argument "that the cause of action did not accrue until the

14

'maturity date of the last note, obligation, or installment,'" the court concluded that the legal injury occurred when the loan was made in violation of the home equity statute, which would be the date of the closing of the loan. *Id.* at 4. The court found that the plaintiffs' defense of the discovery rule to defeat limitations was made too late– the defense was made after the submission date of the summary judgment motions and without leave of court. *Id.*

The Court finds that Defendant WM has proven the validity of its purchase money vendor's lien and purchase money deed of trust lien on the Property and that it is the owner of a valid and perfected vendor's lien and deed of trust against the Property. Plaintiff originally borrowed $104,400 from CLN Mortgage to purchase the Property, which loan was secured by a first lien on the Property, all of which were assigned to Countrywide Funding Corporation d/b/a America's Wholesale Lender. The loan proceeds from Defendant AMC (the $121,500 loan to Plaintiffs Mary Ortegon and Jerry Lopez, Jr. on April 16, 2003) were used to pay the CLN/Countrywide Mortgage, and the liens securing the CLN/Countrywide loan were released. Defendant WM is the beneficial owner of this AMC loan and its securing liens by assignment from Defendant AMC.

As the statement by a Texas court on a Texas statute, and being the only decision out by a Texas court on this area of law, this Court will follow *Rivera* and will apply its holdings to this situation. The closing of Plaintiff Ortegon's loan was April 16, 2003. Plaintiff Ortegon did not file bankruptcy until July 6, 2007, so there is no issue of tolling of the limitations period by her bankruptcy filing. According to Plaintiff Ortegon's proffered testimony, at the loan closing, she obtained a copy of the Affidavit that she and Jerry Lopez, Jr. had signed but that contained two blanks with no information filled in. On September 26, 2007, Plaintiffs filed this adversary proceeding to assert the violation of the Texas Home Equity Lending provisions, a date more than

15

four years after the closing date. This suit is barred by the four-year statute of limitations period found in Texas Civil Practices and Remedies Code § 16.051.

The Court will not rule on whether the discovery rule as an affirmative defense to the application of limitations applies. In their pleadings, specifically Plaintiffs' Original Complaint, Plaintiffs did not plead any facts to put Defendant on notice that Plaintiffs would argue that Plaintiff Ortegon was somehow prevented from discovering the document defect. In the proffer of testimony, Plaintiff Ortegon did not present any facts that kept her from knowing about her claim. Instead, Plaintiffs made the legal argument that, because Texas Constitution Art. XVI, Sec. 50(a)(6)(Q)(x)(f) requires a borrower to make demand on the lender to cure the violation and provide an opportunity to cure prior to the borrower's commencing suit, limitations cannot begin until demand is made, and that this period to make demand could be the life of the loan. Plaintiffs did not file any responsive pleadings to Defendants' answers that asserted limitations as an affirmative defense.

The Court will address one argument made by her attorney that she was an unsophisticated plaintiff and would not have known of the violation had she not visited with him about filing bankruptcy and brought her home loan documents with her, and he discovered the problem. However, the violation at issue was not hidden, even for a person such as Plaintiff Ortegon. As part of the loan closing, she signed several documents that contained text that clearly warned her to not sign any documents that contained blanks, yet she did. She signed a document at closing entitled "Receipt of Copies" in which she acknowledged receiving, at the time of the loan, copies of documents related to the loan. *See* Plaintiffs' Exhibit 10 (Receipt of Copies document).[9] According

---

[9] Plaintiffs describe the contents of their Exhibit 10 as "Various Notices and Disclosures executed in connection with the extension of credit. In Exhibit 10, Plaintiffs include other sorts of notices and disclosures they received at closing, such as notices of right to rescind, right to cancel, RESPA servicing disclosures, loan agreement riders, and other sorts of disclosures.

to that Receipt of Copies, she and Jerry Lopez, Jr. obtained at closing many listed documents, including an "Affidavit Regarding Fair Market Value (Copy of signed document(s) containing no blanks.)." *Id.* Another document included as part of Plaintiffs' Exhibit 10 is entitled "Home Equity Loan Affidavit" and states in paragraph 5 that "none of the instruments, documents or papers signed by the Affiants contained blanks when signed." *Id.* (the Affiants are Plaintiff Ortegon and Jerry Lopez, Jr.). Another document included as part of Plaintiffs' Exhibit 10, entitled "Exhibit 2 Home Equity Affidavit (If Any Item Is Not True, The Affiants Should Handwrite Appropriate Corrections)," which Plaintiff Ortegon and Jerry Lopez, Jr. signed, states in paragraph 11 that "None of the instruments, documents, or papers signed by the Affiants contained blanks when signed." *Id.*[10]

The Court will also not rule on whether an Affidavit of Acknowledgment as to Fair Market Value of Homestead Property is an instrument that creates or alters a legal obligation.[11]

In sum, the applicable four-year period for limitations found in Texas Civil Practices and Remedies Code § 16.051 bars all claims made in Plaintiffs' Original Complaint that a violation of Texas Constitution Art. 16, Sec. 50(a)(6)(Q)(iii) occurred when, at the loan closing on April 16,

---

[10] The Receipt of Copies is undated. The Home Equity Loan Affidavit was sworn to and notarized on April 16, 2003, while the Exhibit 2 Home Equity Affidavit (If Any Item Is Not True, The Affiants Should Handwrite Appropriate Corrections) was sworn to and notarized April 10, 2003. The reason for the difference in the dates is not known.

[11] It is interesting to note that the following documents, all admitted as exhibits, being the Texas Home Equity Adjustable Rate Note, Texas Home Equity Adjustable Rate Rider, Texas Home Equity Security Instrument (First Lien), and the Texas Home Equity Affidavit and Agreement (First Lien) have language instructing the borrower to not sign the document if there are any blanks left to be completed. Additionally, the Texas Home Equity Affidavit and Agreement (First Lien) instructs the borrower "Do not sign this Texas Home Equity Affidavit and Agreement until you have executed an Acknowledgment Regarding Fair Market Value, and received and reviewed the Texas Home Equity Note and the Texas Home Equity Security Instrument." That same Texas Home Equity Affidavit and Agreement also contains the following representation by the borrower, included in section 1, paragraph P, that "No owner of the Property has signed an instrument in which applicable blanks were left to be filled in. There are no blanks in this Texas Home Equity Affidavit and Agreement, the Note, or the Security Instrument." This prohibition against blanks in documents does not include the Acknowledgment Regarding Fair Market Value, although it is existence is recognized in the Texas Home Equity Affidavit and Agreement, specifically under the title of the Affidavit and Agreement. A review of the text of the Acknowledgment shows it does not contain any instruction warning the borrower to not sign it if any blanks are present.

2003, Plaintiff Ortegon signed the Affidavit of Acknowledgment as to Fair Market Value of Homestead Property which contained two blanks left to be completed– blanks for information stating the date of the extension of credit and the value of the homestead at the time of the extension of this credit. A judgment consistent with this decision will be entered.

# # #